**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

OSAGE PRODUCERS ASSOCIATION, )
)
Petitioner, )
)
v. ) Case No. 15-CV-469-GKF-FHM
)
SALLY JEWELL, *et al*., )
)
Respondents. )

**OPINION AND ORDER**

Before the court is the Motion to Dismiss for Lack of Subject Matter Jurisdiction [Dkt. #45] of respondents the Department of Interior; the Bureau of Indian Affairs ("BIA"); Sally Jewell, in her official capacity as Secretary of the Interior; Michael Black, in his official capacity as Director of the BIA; Eddie Streater, in his official capacity as Regional Director of the Eastern Oklahoma Region of the BIA; and Robin Phillips, in her official capacity as Superintendent of the Osage Agency of the BIA (collectively, "the government").

This case arises from a dispute over the government's handling of the permitting process for oil and gas operations in Osage County, Oklahoma. The Osage Producers Association ("OPA") brought this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., seeking review of a large group of drilling and workover permits and permit applications issued to or submitted by its members. For the reasons set forth in this Opinion and Order, the government's motion is granted.

## I. BACKGROUND

The following facts are drawn from the OPA's Amended Petition for Review of Agency Action (the "Amended Complaint"). In Osage County, an oil and gas operator wishing to drill a new well or rework an existing well must first obtain a permit from the Superintendent of the

Osage Agency ("the Superintendent"). Since July 2014, the number of drilling permits issued by the Superintendent has dropped substantially. Many permit applications have been pending before the Superintendent for well over a year without any action. Moreover, of the permits that have been issued, some contain new requirements and limitations that were not part of the original application process. In December 2015, the Superintendent discarded 121 permit applications for failing to provide information for use by the agency in complying with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq*.

The OPA is an Oklahoma nonprofit association comprised of oil and gas producers that have oil and gas leases in Osage County, Oklahoma. It brought this action challenging the Superintendent's management of the permitting process in Osage County on several grounds. In particular, the OPA alleges that the government (1) has unreasonably delayed issuing drilling and workover permits, (2) has issued permits that, because of their additional requirements, are useless and illusory, and (3) has unlawfully discarded permit applications for failing to provide environmental information that the Superintendent has no authority to require. The OPA's allegations are of a general nature. It seeks review of *all* agency actions falling within one of the above listed categories without specifically identifying those actions.

## II. <u>DISCUSSION</u>

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a case for lack of subject matter jurisdiction. "Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Here, the government's motion asserts a facial attack. Accordingly, the court accepts all factual allegations in the OPA's Amended

Complaint as true and asks whether those allegations, standing alone, are sufficient to establish subject matter jurisdiction. *See Wyoming v. United States*, 279 F.3d 1214, 1222 (10th Cir. 2002).

The government asserts three grounds for dismissal: (1) that the Amended Complaint presents an impermissible programmatic challenge, (2) that the OPA has not alleged facts establishing its standing to bring this case, and (3) that the OPA and its members have failed to exhaust required administrative remedies. The court considers these issues in turn.

***A. Programmatic Challenge***

The government first argues that the OPA's Amended Complaint fails to adequately identify the agency actions for which it seeks review. As just mentioned, the OPA's claims arise under the APA. Section 702 of the APA "provides both a cause of action and a waiver of sovereign immunity for claims in which a plaintiff has suffered 'a legal wrong because of agency action,'" *Iowa Tribe of Kansas & Nebraska v. Salazar*, 607 F.3d 1225, 1230 (10th Cir. 2010) (quoting 5 U.S.C. §702), or been "adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702. To obtain review under this provision, a plaintiff must (1) identify some final "agency action" to be reviewed, and (2) show that it has suffered a "legal wrong" or been "adversely affected or aggrieved" by the action at issue. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882–83 (1990); *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 792 (8th Cir. 1996). The term "agency action" is defined as "includ[ing] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

Section 702's "agency action" requirement precludes "'broad programmatic attacks' on an agency's administration of a program." *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 803 (9th Cir. 2013) (alterations omitted) (quoting *Norton v. S. Utah Wilderness All.*,

542 U.S. 55, 64 (2004)); *Lujan*, 497 U.S. at 890–91.  The Supreme Court first elaborated on this limitation in *Lujan*.  *Lujan* involved a challenge to the Bureau of Land Management's "land withdrawal review program," a term referring to an unspecified group of several hundred administrative decisions reclassifying federal lands.  *See* 497 U.S. at 890.  Rejecting the challenge, the Court determined that the "program" was "not an 'agency action' within the meaning of § 702, much less a 'final agency action' under § 704."  *Id.*  In reaching this conclusion, the Court emphasized that § 702 only allows for review of "identifiable 'agency action,'" such as a specific order or regulation or a "completed universe of particular . . . orders [or] regulations."  *Id.*  Put differently, the Court explained, the statute requires plaintiffs to challenge agency action on a "case-by-case" basis, *id.* at 894, rather than pursuing "wholesale improvement of [an agency] program by court decree," *id.* at 891 (emphasis omitted).

Here, the government submits that *Lujan* requires dismissal of the OPA's Amended Complaint.  In particular, it contends that the Amended Complaint asserts an impermissible programmatic challenge and thus falls outside of § 702's limited waiver of sovereign immunity.  In response, the OPA maintains that its challenge is directed at agency actions, not an agency program, and that the APA does not require it to individually identify each and every permitting decision it seeks to challenge.

The court agrees with the government.  The APA only allows for review of "*identifiable* 'agency action.'"  *Id.* at 890 (emphasis added).  The OPA does not identify the specific actions it seeks to challenge.  Rather, it generically describes certain arbitrary or unlawful agency practices—such as unreasonably delaying the issuance of drilling permits—and requests review of *all* agency actions falling within those descriptions.  This is no different than the challenge at issue in *Lujan*.  Here, as in that case, the court is faced with a generic challenge to an amorphous

group of several hundred administrative decisions.  Although the OPA does not style its attack as

one against an agency "program," its identification of the agency actions at issue is no less

vague.[1]  *See Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 490–91 (5th Cir.

2014); *Sierra Club v. Peterson*, 228 F.3d 559, 566–67 (5th Cir. 2000) (en banc).  Reading the

Amended Complaint, the court is unable to identify which, or even how many, agency actions

are subject to this suit.[2]  Because the OPA does not direct its challenge against an identifiable

agency action or group of actions, its suit falls outside of § 702's limited waiver of sovereign

---

[1] Take, for example, the OPA's claim that the government has unreasonably delayed issuing drilling permits.  The only identifying information petitioner provides about the permitting actions it seeks to challenge is that they have been unreasonably delayed.  This description does nothing to narrow the universe of possible permitting actions subject to the court's review.  Rather, it effectively requires the court to review *every* pending permit application for unreasonable delay.  This sort of across-the-board challenge is not justiciable under § 702.  *See Lujan*, 497 U.S. at 899 (noting that an APA plaintiff "cannot demand a general judicial review of [an agency's] day-to-day operations"); *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 490–91 (5th Cir. 2014) (concluding that a "blanket challenge to *all*" permitting and leasing decisions by the government on a large tract of national park land constituted an impermissible programmatic attack because "[t]he challenge [was] to the way the Government administer[ed the] programs and not to a particular and identifiable action taken by the Government" (emphasis in original)).

[2] In its Amended Complaint, the OPA identifies a number of specific agency actions as examples of the government's alleged wrongdoing.  Although a challenge directed at these specific actions could state a justiciable claim (if not for other deficiencies in the OPA's Amended Complaint, discussed below), they do not allow the petitioner to assert a blanket challenge against an unspecified group of similar agency actions.  *See Alabama-Coushatta Tribe*, 757 F.3d at 491 ("Even if the Tribe were to name some specific agency actions as examples of the agencies' alleged wrongdoing, it remains that the challenge is directed at the federal agencies' broad policies and practices . . . ."); *Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000) (noting that plaintiffs could not "challenge an entire program by simply identifying specific allegedly-improper final agency actions within that program"); *Donelson v. United States*, No. 14-CV-316-JHP-FHM, 2016 WL 1301169, at *5 (N.D. Okla. Mar. 31, 2016) ("Plaintiffs could not challenge an entire leasing program by identifying specific allegedly-improper final agency actions within that program and using those examples as evidence to support a sweeping argument that the BIA's entire leasing program dating back to 1979 violates NEPA.").

immunity. *See Alabama-Coushatta Tribe*, 757 F.3d at 489–91; *Sierra Club*, 228 F.3d at 566–67.[3] Accordingly, the government's motion to dismiss is granted.

***B. Associational Standing***

The government next contends the OPA has not alleged facts establishing its standing to bring this case on behalf of its members. An association has standing to sue on its member's behalf if: (1) "its members would otherwise have standing to sue in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The first prong of this test "embodies the Article III requirements of injury in fact, causal connection to the defendant's conduct, and redressability." *Am. Forest & Paper Ass'n v. U.S. E.P.A.*, 154 F.3d 1155, 1159 (10th Cir. 1998). It requires an associational plaintiff to specifically identify at least one member harmed by the defendant's conduct, *see Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009); *Chamber of Commerce of U.S. v. E.P.A.*, 642 F.3d 192, 199 (D.C. Cir. 2011), which, in the APA setting, means identifying at least one member affected for each agency action under review, *see Sec. Friends of The Earth, Bluewater Network Div. v. U.S. Dep't of Interior*, 478 F. Supp. 2d 11, 16 (D.D.C. 2007); *Indus. & Fin. Markets Ass'n v. United States*

---

[3] It is not entirely clear that this issue arises under Rule 12(b)(1). *Cf. United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1637 (2015) (noting that time limits on actions against the government are not "jurisdictional merely because they condition waivers of immunity"); *Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523 n.3 (1991) ("The judicial review provisions of the APA are not jurisdictional . . . ."). In any event, because the "court applies the same standards [to facial challenges] under Rule 12(b)(1) that are applicable to a Rule12(b)(6) motion," the court would reach the same result under either rule. *Meadows v. Explorer Pipeline Co.*, No. 13-CV-568-GKF-TLW, 2014 WL 1365039, at *6 (N.D. Okla. Apr. 7, 2014) (citing *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010)).

*Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 400 (D.D.C. 2014) (citing *Am. Trucking Ass'ns v. Fed. Motor Carrier Safety Admin.*, 724 F.3d 243, 248 (D.C. Cir. 2013)); *cf. Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (noting that "a plaintiff must demonstrate standing for each claim he seeks to press" (internal quotation marks omitted)).

Here, the government submits that the OPA has failed to allege facts establishing the first prong for associational standing. In particular, it notes that the petitioner has not identified the member or members affected by the agency actions under review. In response, the OPA contends that such detailed allegations are unnecessary and that generally alleging wrongdoing towards unidentified members is enough.

The court again agrees with the government. "[S]tanding is not dispensed in gross." *Davis*, 554 U.S. at 734 (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). The OPA must establish standing for each agency action it seeks to challenge. *See id.* This means specifically identifying at least one member adversely affected by each challenged agency action. The OPA's Amended Complaint does not name any of its members nor does it identify the specific agency actions it seeks to challenge.[4] Without such information, the OPA cannot establish

---

[4] The OPA's Amended Complaint does identify two companies that have been adversely affected by governmental permitting decisions. Crucially, however, the Amended Complaint does not contain any indication that those companies are OPA members. Although the OPA does assert this missing fact in its response to the government's motion to dismiss, allegations in a response brief cannot cure deficiencies in a complaint. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993); *Bus. Loan Ctr., LLC v. Driskill Indus., Inc.*, No. CIV-07-1314-HE, 2008 WL 2704390, at *1 (W.D. Okla. July 3, 2008); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[2] (3d ed. 2014) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

associational standing. This defect provides an alternative basis for granting the government's motion to dismiss.[5]

***C. Exhaustion of Administrative Remedies***

Finally, the government submits that the OPA's claims to compel agency action should be dismissed for failure to exhaust required administrative remedies.

"When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" *Lujan*, 497 U.S. at 882 (citing 5 U.S.C. § 704).[6] "Agency action is not 'final' for purposes of § 704 until 'an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule.'" *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 n.9 (10th Cir. 2005) (quoting *Darby v. Cisneros*, 509 U.S. 137, 146 (1993)); *accord* 5 U.S.C. § 704. Importantly, courts may not impose additional exhaustion requirements "where the agency action [at issue] has already become 'final.'" *Darby*, 509 U.S.

---

[5] The government also contends that the OPA's claims require the participation of its members. The court declines to address this argument at the present time. Without a clearer view of the specific actions the OPA intends to challenge, the court cannot reliably assess whether member participation will be necessary.

[6] Section 704 reads in relevant part as follows:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. . . . Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.

at 154.  Thus, "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or . . . agency rule."  *Id.*

Where exhaustion is required only by agency rule, the APA requires that the challenged agency action remain "inoperative" pending that review in order to remain non-final.  *See* 5 U.S.C. § 704; *Darby*, 509 U.S. at 154.  An agency's failure or refusal to take positive action for the benefit of an applicant—such as denying an application for a permit or license or failing to act on such an application—is considered "inoperative" agency action for purposes of § 704.  *See Jech v. Dep't of Interior*, 483 Fed. App'x 555, 560 (10th Cir. 2012) (noting that agency inaction is considered "inoperative" pending review).[7]

As relevant here, BIA regulations allow for intra-agency review of all decisions and orders made by the Superintendent, *see* 25 C.F.R. § 226.69 (stating that the Superintendent's decisions are subject to appeal pursuant to 25 C.F.R. part 2), and require exhaustion of these procedures as a prerequisite to APA review:

> No decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. 704, unless when an appeal is filed, the official to whom the appeal is made determines that public safety, protection of trust resources, or other public exigency requires that the decision be made effective immediately.

---

[7] *Manny Indus. v. Sec'y of Labor*, 432 F. Supp. 88, 89 (C.D. Cal. 1977), *aff'd*, 596 F.2d 409 (9th Cir. 1979) ("[A]n initial decision is inoperative so long as it has no positive effect[,] that is, . . . so long as the status quo before the decision continues. An initial decision probably should be considered inoperative even though the claim is refused, [or] the license is denied. . . ." (quoting 3 Kenneth Culp Davis, *Administrative Law Treatise*, § 20.08 at 106 (1st ed. 1958)); U.S. Dept. of Justice, *Attorney General's Manual on the Administrative Procedure Act* 105 (1947) ("The requirement that agency action be inoperative pending required appeals to the agency or to superior agency authority does not require the agency to take positive action for the benefit of an applicant.  It was not intended to require the issuance of licenses or the payment of benefits in any case where an agency requires that the denial of licenses or benefits be appealed to it or to superior agency authority as a prerequisite to judicial review.").

25 C.F.R. § 2.6(a); *see also Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir. 1994) (recognizing that 25 C.F.R. § 2.6(a) requires administrative exhaustion as a prerequisite to judicial review).  These regulations include a procedure by which a person aggrieved by an official's failure to act "can make the official's inaction the subject of appeal."  25 C.F.R. § 2.8.

Here, the government submits that these regulations require administrative exhaustion and that neither the OPA nor its members have exhausted its claims to compel agency action.[8]  In response, the OPA does not dispute that exhaustion is required but rather contends that the court should excuse these required procedures on futility grounds.

As an initial matter, the court agrees that exhaustion is required.  The BIA's regulations mandate administrative exhaustion, and the challenged agency actions are presently inoperative.  *See Jech*, 483 Fed. App'x at 560; *supra* note 7.  Accordingly, unless the court can excuse these required procedures on futility grounds, the agency actions at issue are not "final" and thus not subject to judicial review under § 704.

After reviewing their initial briefs, the court ordered the parties to submit supplemental briefs "addressing whether the futility of a required intra-agency review process can render agency action 'final' within the meaning of 5 U.S.C. § 704—in other words, whether a court can excuse a petitioner's failure to exhaust required administrative procedures in an APA case." [Dkt. #56, p. 2].  In doing so, the court specifically instructed the parties to discuss the relevance, if any, of the Supreme Court's decisions in *Weinberger v. Salfi*, 422 U.S. 749, 765–66 (1975), *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), and *Booth v. Churner*, 532 U.S. 731, 741 n.6

---

[8] Notably, the government does not contend that exhaustion is required for the OPA's claims challenging additional requirements attached to newly issued permits.  [*See* Dkt. #54, p. 9].

(2001), all of which held or stated that futility and other judicially created exceptions are inapplicable to statutory exhaustion requirements.

Unsurprisingly, the parties take differing views on this issue. For its part, the government submits that 5 U.S.C. § 704, read in conjunction with 25 C.F.R. §§ 2.6(a), 2.8, and 226.69, requires administrative exhaustion and that the court cannot excuse this requirement on futility grounds. In contrast, the OPA contends that § 704 of the APA does not explicitly mandate administrative exhaustion and that the cases cited above are distinguishable on this basis.

The court agrees with the government. Whether futility or other exceptions are applicable to an administrative exhaustion requirement depends on whether that requirement is statutorily or judicially imposed. *See McCarthy*, 503 U.S. at 144; *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998). When "Congress specifically mandates, exhaustion is required," *McCarthy*, 503 U.S. at 144,[9] and "may not be dispensed with merely by a judicial conclusion of futility," *Salfi*, 422 U.S. at 766; *Booth*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").[10] In contrast, where not clearly required by Congress, exhaustion applies "as a

---

[9] *See also Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 579 (1989) ("Our past cases have recognized that exhaustion of administrative remedies is required where Congress imposes an exhaustion requirement by statute."); *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 502 n.4 (1982) ("Of course, exhaustion is required where Congress provides that certain administrative remedies shall be exclusive."); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938) (noting the "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted").

[10] In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court carved out a narrow exception to the ordinary principle that statutory exhaustion requirements are mandatory. *See id.* at 330–31; *see also* 2 Richard J. Pierce, Jr., *Administrative Law Treatise* § 15.3, at 1263–64 (5th ed. 2010) ("Judges cannot excuse a petitioner from its duty to exhaust a remedy that is made mandatory by a statute, but statutory exhaustion requirements are subject to the difficult-to-interpret exception to the duty to exhaust announced in *Mathews v. Eldridge* . . . ."). As

matter of judicial discretion," *Darby*, 509 U.S. at 154; *accord McCarthy*, 503 U.S. at 144, and thus is subject to a variety of common law exceptions, including futility, *see Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (Sotomayor, J.).

Here, § 704 of the APA limits judicial review to *final* agency action and, importantly, provides that agency action is not final "until 'an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule.'" *Simmat*, 413 F.3d at 1233 n.9 (quoting *Darby*, 509 U.S. at 146); *accord* 5 U.S.C. § 704.  In short, § 704 requires administrative exhaustion when an agency's regulations require administrative exhaustion.  This is a statutory exhaustion requirement.  *See Darby*, 509 U.S. at 147; *Salfi* 422 U.S. at 766.  The court, therefore, may "not read futility or other exceptions into" the statute not expressly provided by Congress.  *See Booth*, 532 U.S. at 741 n.6; *see also Shawnee Trail Conservancy v. U.S. Dep't of Agric.*, 222 F.3d 383, 389 (7th Cir. 2000) (noting that the court did "not believe that the district court had the power to waive the statutorily-mandated exhaustion requirement of the APA"); *Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409, 411 (D.C. Cir. 1998) ("If courts are forbidden from requiring exhaustion when § [704] of the APA does not, why should courts be free to excuse exhaustion when the next to last clause of § [704] demands it? If an agency rule requires, without exception, that a party must take an administrative appeal before petitioning for judicial review, on what basis may a court excuse non-compliance?" (dictum)); *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Labor*, 118 F.3d 205, 212 (4th Cir.

---

summarized by the Tenth Circuit, this exception requires (1) that "the plaintiff assert[] a colorable constitutional claim that is collateral to the substantive issues" before the agency, (2) that "exhaustion would result in irreparable harm," and (3) that "exhaustion would be futile." *Harline v. Drug Enf't Admin.*, 148 F.3d 1199, 1203 (10th Cir. 1998); *accord Koerpel v. Heckler*, 797 F.2d 858, 862 (10th Cir. 1986).  Because the OPA's claims are neither constitutional nor collateral to the substantive issues before the agency, this narrow exception is not applicable here.

1997) (noting that the plaintiff had "not pointed to any case, *involving a challenge under the APA*, since *Darby*, that ha[d] subjected the exhaustion requirement to judicial discretion" (emphasis in original)); *Ctr. for Food Safety v. Hamburg*, No. 14-CV-04932-YGR, 2015 WL 6755596, at *6 (N.D. Cal. Nov. 5, 2015) (concluding that in light of "*Darby* and its progeny . . . courts no longer have discretion to excuse failure to exhaust mandatory administrative remedies in APA cases").

Although its argument is not entirely clear, it appears that the OPA believes this exhaustion requirement is somehow less than mandatory because it is based on a combination of statutory and regulatory provisions. To the extent that this is the OPA's argument, it lacks merit. The Supreme Court dealt with a similar exhaustion regime in *Salfi*. *Salfi* involved a constitutional challenge to an eligibility requirement in the Social Security Act.[11] *See* 422 U.S. at 753–54. Like the present case, the exhaustion requirement at issue in *Salfi* resulted from a combination of statutory and regulatory provisions. In particular, § 405 of the Social Security Act limited judicial review to "*final* decision[s] of the Secretary," *id.* at 763 (emphasis added) (quoting 42 U.S.C. § 405(g)), and granted the Secretary authority to promulgate regulations defining finality under the statute, *see id.* at 766 (citing 42 U.S.C. § 405(a)). Pursuant to that authority, the Secretary issued regulations specifying that a "final decision" required exhaustion of certain intra-agency review procedures. *See id.* at 765–66. The Supreme Court concluded that these requirements were mandatory and thus could "not be dispensed with merely by a judicial conclusion of futility." *Id.* at 766. As applied to the present case, *Salfi* forecloses any argument that this court can excuse a mandatory exhaustion requirement simply because that

[11] The challenged qualification denied benefits to "surviving wives and stepchildren who had their respective relationships to a deceased wage earner for less than nine months prior to his death." *Weinberger v. Salfi*, 422 U.S. 749, 754 (1975).

requirement is based on a combination of statutory and regulatory provisions. *See also Bastek*, 145 F.3d at 93–94 (holding that an exhaustion requirement premised on a combination of statutory and regulatory provisions was mandatory and thus not subject to judicially created exceptions).[12]

For the foregoing reasons, the court holds that, taken together, 5 U.S.C. § 704 and 25 C.F.R. §§ 2.6(a), 2.8, and 226.69 require exhaustion of the petitioner's claims to compel agency action and that the court cannot excuse these required procedures on futility grounds. Because neither the OPA nor its members have exhausted the agency actions at issue, these actions are not "final" and thus not subject to judicial review under the APA. This defect provides a third basis for granting the government's motion to dismiss.[13]

---

[12] The OPA relies on *Houghton v. Shafer*, 392 U.S. 639 (1968), *Gilmore v. Weatherford*, 694 F.3d 1160 (10th Cir. 2012), and *Jech v. Department of Interior*, 483 Fed. App'x 555 (10th Cir. 2012), to support its contention that the futility of a required intra-agency review process can render agency action 'final' within the meaning of 5 U.S.C. § 704. The OPA's reliance on these cases is misplaced. Neither *Houghton* nor *Gilmore* arose under the APA or otherwise involved a statutory exhaustion requirement. *See Houghton*, 392 U.S. at 640; *Gilmore*, 694 F.3d at 1167 (noting that the court assumed for purposes of its analysis that the petitioners' claims arose "under the common law rather than the APA"). As for *Jech*, although it entertained a futility argument, the court in that case did not consider whether, let alone hold that, futility can excuse a petitioner's failure to exhaust required administrative remedies in an APA case. *See Jech*, 483 Fed. App'x at 560.

[13] In the Tenth Circuit, the APA's limitation to "final agency action" is considered a jurisdictional requirement. *See McKeen v. U.S. Forest Serv.*, 615 F.3d 1244, 1253 (10th Cir. 2010) ("Pursuant to the APA, we have jurisdiction to review only 'final agency actions.'"); *accord Sierra Club, Inc. v. Bostick*, 787 F.3d 1043, 1060 (10th Cir. 2015); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1189 (10th Cir. 2014); *Tsegay v. Ashcroft*, 386 F.3d 1347, 1353–54 (10th Cir. 2004); *Cherry v. U.S. Dep't of Agric.*, 13 Fed. App'x 886, 890 (10th Cir. 2001). Although several Supreme Court cases cast doubt on this jurisdictional labeling, *see Air Courier Conference*, 498 U.S. at 523 n.3 ("The judicial review provisions of the APA are not jurisdictional, so a defense based on exemption from the APA can be waived by the Government." (citation omitted)); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006) (noting that courts should treat "threshold limitation[s] on a statute's scope . . . as jurisdictional" if and only if Congress provides a clear statement to that effect); *Kwai Fun Wong*, 135 S. Ct. at 1637 (noting that time limits on actions against the government are not "jurisdictional merely because

WHEREFORE, the respondents' Motion to Dismiss for Lack of Subject-Matter Jurisdiction [Dkt. #45] is granted.  The OPA is granted leave to file a second amended complaint, on or before June 10, 2016, to correct the deficiencies identified herein.  If no second amended complaint is filed, the court will enter judgment dismissing the case without prejudice.

IT IS SO ORDERED this 1st day of June, 2016.


GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

they condition waivers of immunity") *see also* Sundeep Iyer, Comment, *Jurisdictional Rules and Final Agency Action*, 125 Yale L.J. 785 (2016), the court need not reconcile these cases here. Whether classified as jurisdictional or not, it is undisputed that neither the OPA nor its members have exhausted the agency actions under review.  [*See* Dkt. #62, pp. 18–19; Dkt. #50, pp. 9–11]. For this reason, the court would reach the same result regardless of the requirement's proper treatment.